## JOHN B. BOWMAN

*v.*

## HENRY A. CUNNINGHAM.

1. SPECIFIC PERFORMANCE—*addressed to the sound discretion of the court.* An application for the specific performance of a contract is addressed to the sound legal discretion of the court; and even where a legal contract is shown to exist, it will not be decreed as a matter of course.

2. SAME—*contract must be certain and fair.* As a general rule, courts of equity will decree a specific performance where the contract is in writing, and is certain and is fair in all its parts, and is based upon an adequate consideration, and is capable of being performed, but otherwise not.

3. If the contract is not certain, and it is not clear, from the evidence, that the exact terms thereof were agreed upon and understood by the parties, and the contract is not fair in all its parts, it will not be specifically enforced.

4. SAME—*of contract, where the party's right grows out of a prior champertous agreement.* A court of equity will not lend its aid to decree the specific performance of one contract which grows directly out of another, which is illegal, immoral, or tainted with champerty.

5. SAME—*of contract rescinded.* If, after the making of a written contract, a dispute arises as to its terms, etc., and the complainant proposes to set aside the entire negotiations, and for the surrender of all papers held by either party, which is accepted by the other party, the complainant can not have a decree for the specific performance of the contract thus rescinded.

WRIT OF ERROR to the Circuit Court of St. Clair county; the Hon. WILLIAM H. SNYDER, Judge, presiding.

Mr. W. H. UNDERWOOD, and Mr. R. A. HALBERT, for the plaintiff in error.

Mr. GUSTAVUS KŒRNER, for the defendant in error.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a bill in equity, brought by Henry A. Cunningham, in the circuit court of St. Clair county, against John B. Bow-

man, to enforce the specific performance of an alleged agreement for the interchange, by deed of conveyance, of certain town lots in the city of East St. Louis.

The circuit court, on the hearing, entered a decree substantially as prayed for in the bill, to reverse which this writ of error has been prosecuted.

The facts connected with the transaction, upon which a court of equity is called upon to decree a specific performance of a contract, are peculiar. John McKnight originally owned the property. He died in 1822, leaving as his heirs nine brothers and sisters, most of whom have since died. At the time (in the year 1866) that negotiations commenced between complainant and defendant, the property was claimed by and was in the possession of the defendant.

Samuel Galloway, of Ohio, held deeds from thirty or forty of the heirs of John McKnight, in trust for them, and, to secure himself, a contingent fee of one-half of what should be realized. Cunningham made a similar arrangement with a few of the heirs in St. Louis, and they made a deed to him. He then made an arrangement with Galloway, by which he was to receive one-half of what Galloway should realize. Cunningham then entered into a contract with Millard, an attorney, who had been a partner of the defendant, to give him one-half of what he should make, and Millard contracted with Davis, an attorney, to share what he would realize out of the transaction equally with him.

After these preliminary arrangements had been settled, several of the tenants of the defendant, in possession of a portion of the property, were induced to attorn to Cunningham, after which a compromise was proposed.

On the 24th day of October, 1866, a meeting was had between the parties, at the office of Cunningham, in St. Louis, the object of which was to effect a settlement in regard to the property. At this meeting, it is claimed, by complainant, a contract was made, and this bill is filed to enforce it.

While it is clear some sort of an arrangement was attempted

to be made, yet, from the facts in evidence, it is equally clear that it is impossible to determine, with any degree of certainty, the time, character, terms or conditions of the agreement.

One agreement was signed by the parties, which was as follows:

"This agreement, made and entered into this the 24th day of October, A. D. 1866, between Henry A. Cunningham and John B. Bowman, witnesseth, that the said Cunningham has this day quit-claimed to said Bowman certain lots, in said deed named, in consideration of said Bowman's quit-claim to the remaining lots originally [conveyed] to John McKnight by Thomas Brady, as per deed of record at Belleville, and of his agreement to do or say nothing to invalidate or in any way affect the title or sale of said lots quit-claimed to said Cunningham; and whereas, the said Cunningham has made the same agreement as regards the lots sold by him to said Bowman,

Now, it is mutually agreed between the parties, that any violation of said agreement by either of said parties shall release the other of all obligation in this behalf, and the party so violating his pledge shall be liable to an action for damages therefor. The said Cunningham also agrees, with said Bowman, that he will neither say nor do anything to invalidate the title of said Bowman to certain lots claimed by said Bowman under Thomas Brady, in said town of Illinois, now part of East St. Louis.

"HENRY A. CUNNINGHAM,
"JOHN B. BOWMAN."

This, however, does not purport to be an agreement by which one of the parties is to convey lands to the other. It rather implies that deeds had been made; but even if it was a contract to convey, it refers to deeds which seem to form a part of the contract. And in order to determine the whole contract between the parties, it would be necessary to go to those deeds which form a part.

When, however, resort is had to the deeds, both parties concede they contain material mistakes, and do not express what was intended; that an attempt was made by the parties themselves to reform the deeds, but as they failed to agree, nothing was accomplished in that direction—the deeds were neither acknowledged nor delivered. This is the kind of a contract resort is had to a court of equity to enforce.

An application for the specific performance of a contract is addressed to the sound legal discretion of the court; and even where a legal contract is shown to exist, it will not be decreed as a matter of course. *Frisby* v. *Ballance*, 4 Scam. 287 ; *De Wolf* v. *Pratt*, 42 Ill. 198.

In 2 Story Eq. Jur., sec. 741, the rule is laid down as follows: "Generally, it may be stated, that courts of equity will decree a specific performance where the contract is in writing, and is certain, and is fair in all its parts, and is for an adequate consideration, and is capable of being performed, but not otherwise."

The contract which is attempted to be enforced by this bill is not certain. It is by no means clear, from the evidence, that the exact terms of an agreement were agreed upon and understood by the parties. Neither is the contract fair in all its parts. Cunningham, as appears from the evidence, claimed to represent eight-ninths of the John McKnight title, which he proposed to convey to the defendant, to a portion of the lots, in order to obtain a conveyance from defendant for the balance. But he did not have, and was not able to convey, what he claimed to represent. He only had a conveyance himself from a few of the heirs, and had no power of attorney or deed from Galloway, who had obtained a deed from a large portion of the heirs. Independent, however, of this fact, the position in which the testimony in this case places the complainant is not such as to entitle him to the favorable consideration of a court of equity.

The contract under and by which he claims to hold and dispose of the McKnight title, which is the foundation of the

alleged agreement this bill was filed to enforce; if not tainted with champerty, is one of that species of contracts which courts of equity do not regard with favor.

It is urged, that there is no champerty in the contract, for the reason the proof fails to show Cunningham and his associates, who have the conditional contracts, were to carry on the litigation to recover the McKnight property at their own costs. It is, however, quite apparent such was the case. In this case but one of the McKnight heirs is called as a witness, and he testifies that he knows nothing of the nature of the cause pending.

While it is true, as suggested, that this litigation is not between Cunningham and the McKnight heirs, and the contract between them is not directly involved, yet a court of equity will not lend its aid to decree the specific performance of one contract which grows directly out of another which is illegal or immoral.

There is another fatal objection to a decree for a specific performance in this case.

Two or three days after the alleged contract was made, as the evidence tends to show, the parties had an interview at the defendant's office, and after some time spent in quarreling over the terms of the agreement, Cunningham proposed to set aside all the negotiations, and broke up the whole arrangement. This, Bowman accepted, and it was then agreed that all papers held by either party should be surrendered.

This version of the closing up of all negotiations is given by the defendant in his evidence, in which he is substantially corroborated by the weight of the testimony submitted upon that question.

If this agreement was entered into by Cunningham and Bowman, and the evidence tends to establish the fact that it was, independent of other considerations, such would be a complete answer to the case made by the bill.

The decree will be reversed and the bill dismissed.

*Decree reversed.*