## HENRY L. GLOS

### *v.*

## FREDERICK R. WILSON.

*Opinion filed June 19, 1902—Rehearing denied October 10, 1902.*

1. SPECIFIC PERFORMANCE—*when contract is too uncertain to be specifically enforced.* A contract to pay a certain amount for a quit-claim deed to property described merely as "lot 56, bl. 12, sec. 7, 39, 14," is too uncertain in description to be specifically enforced without being reformed.

2. CONTRACTS—*contract construed as to obligation to make payment.* A contract whereby a party agrees to pay a certain amount for a quit-claim deed, the language being, "to pay on demand when quit-claim is presented," imposes no obligation upon the proposed purchaser to make payment until the quit-claim deed is tendered.

APPEAL from the Superior Court of Cook county; the Hon. JESSE HOLDOM, Judge, presiding.

This is an appeal from the decree of the superior court of Cook county sustaining a demurrer to a bill in equity filed by appellant to enforce the specific performance of a certain contract and dismissing the bill at the cost of appellant.

The bill alleges that appellant, Glos, being the owner of a tax title on lot 56, block 12, canal trustees' subdivision of section 7, township 39 north, range 14, east of the third principal meridian, Cook county, Illinois, on the 26th day of September, 1899, entered into a contract with appellee in the following words and figures:

"CHICAGO, *September 26, 1899.*

"I hereby agree to pay Henry L. Glos for quit-claim deed to lot 56, bl. 12, sec. 7, 39, 14, legal redemption and ten per cent per annum on legal redemption, he to give five per cent discount for cash. I to pay on demand when quit-claim is presented.

Agreed to: HENRY L. GLOS."       F. R. WILSON.

The bill also alleges that by said contract in writing appellant agreed to sell and did sell, and agreed to convey to Wilson by quit-claim deed, all his right, title and

interest in said lot, and Wilson agreed to buy the same and pay therefor a sum of money equal to the amount which by law would have been necessary to redeem said lot from the tax sale under which the tax title owned by Glos was derived, at the end of the two years allowed by statute for redemption from tax sale, together with an amount equal to interest at the rate of ten per centum per annum on said redemption amount from the end of the redemption period until payment should be made, and also, in addition, a sum equal to all amounts paid by Glos for taxes subsequent to the expiration of the redemption period, with interest at the rate of ten per centum per annum from the dates of such respective payments, and it was intended and agreed that if said Wilson had not sooner paid said purchase money he should be bound to do so at once, upon Glos presenting and tendering to him a quit-claim deed sufficient to convey all his interest and title in said real estate, and the bill further alleged that the words "legal redemption," as used in the contract, have a well known and definite meaning to persons engaged in the real estate business in Chicago, and was well understood by both Glos and Wilson in the sense above stated. The bill also averred that appellant, together with his wife, executed a quit-claim deed of the lot, and on September 21, 1900, tendered it to Wilson and demanded payment of the money due under the contract, which amounted to $559.15. A copy of the deed tendered was attached to the bill as an exhibit. It describes the property as above, and purports to be executed on September 5, 1900. The bill further alleged that Wilson refused to accept the deed or pay the amount demanded, or any amount, for the conveyance, and has continued to decline to carry out said agreement ever since said date, although frequently applied to for that purpose, and that the appellant's title to the land sold is derived under a sale made October 19, 1887, to pay a delinquent special assessment of the city of Chicago for $123.77;

that to redeem on October 19, 1889, would have required $248.54, and complainant paid also $9.24 on March 24, 1891, for taxes of 1890; $10.86 on December 27, 1892, for taxes of 1891; $10.53 on January 23, 1895, for taxes of 1894, and $8.51 on February 28, 1900, for taxes of 1899. The bill further alleges that by the clause, "he to give five per cent discount for cash," it was meant and agreed that if Wilson should pay in cash upon the tendering of a quit-claim deed to him, Glos should. allow a discount of five per cent from the amount agreed to be paid in the preceding clause, but on account of Wilson's refusal to accept said deed and pay the purchase price he will not be entitled to receive such discount in computing the amount to be paid under a decree to be entered herein. The bill prays for a decree ordering specific performance of the contract.

ENOCH J. PRICE, for appellant.

GEORGE GILLETTE, for appellee.

Mr. JUSTICE BOGGS delivered the opinion of the court:

The description given in the instrument sought to be enforced, of the premises for which the quit-claim deed was to be made, is too indefinite and uncertain to warrant a decree ordering specific performance of the contract. There is no such governmental subdivision of a section as a "block." A contract may be reformed and then specifically enforced as reformed; but the bill in this instance does not pray that the contract be reformed. The obligation of the appellee, under the true construction of the instrument, was, at the most, only to pay the appellant, on presentation of a quit-claim deed, the amount necessary to effect the "legal redemption" of the premises intended to be described, from the tax sale, and ten per cent per annum on such amount from the time when such legal redemption could or should have

been made, under the statute, to the date of the instrument, to-wit, September 29, 1899. The appellant construed the contract to entitle him to receive the said amount, with interest at the said rate of ten per cent per annum, until such time as he should voluntarily elect to tender to the appellee a deed for the premises. He prayed specific performance of the contract upon that theory. The obligation of the appellant under the contract, even if it be conceded that its character is such that it might, in any event, be specifically enforced, was to tender, within a reasonable time, a quit-claim deed for the premises which he insists were intended to be affected by the contract, in order to entitle him to receive the amount necessary to effect a "legal redemption," with interest thereon at the rate of ten per cent per annum to the date of the instrument, less five per cent, etc. He did not comply with his obligation in this respect until a year, or within five days of a year, thereafter, and then demanded that the court should require the appellee to pay interest on the amount necessary to effect a "legal redemption," at ten per cent per annum, for this additional period of one year, during which he had voluntarily and without any excuse, so far as the bill discloses, omitted to perform the obligations of the contract upon his part. It may be gathered from some vague and indefinite expressions in the bill that the appellant sought to justify his delay in tendering the deed on the ground that under the contract it was the duty of the appellee to tender the money and demand the deed. The contract will not admit of such construction. The obligation of the appellee to make payment did not arise until the quit-claim deed should be tendered to him.

We need not refer to other grounds or reasons advanced by counsel for appellee in justification of the decree of the court.

The decree is affirmed.                    *Decree affirmed.*