EDNA I. FOWLER

*v.*

HARRIET FOWLER.

*Opinion filed October 26, 1903.*

1. PLEADING—*in chancery—when amendment to verified bill need not be sworn to.* An amendment to a verified bill in chancery which merely enlarges and amplifies a statement in the bill may be made without being sworn to, particularly where the defendant demurs, and thus admits the truth of the amendment.

2. SAME—*when defendant is estopped to claim that exhibits were not made part of the bill.* A defendant is estopped to claim that letters attached as exhibits to certain amendments made to an amended bill were not made a part of the bill, where she demurs to the amended bill and to all amendments thereto.

3. SPECIFIC PERFORMANCE—*chancellor's discretion must be exercised according to settled principles of equity.* The discretion of the chancellor in granting or refusing specific enforcement of a contract must be exercised according to settled principles of equity, and not arbitrarily.

4. SAME—*when equity must decree specific performance.* A court of equity will, as a matter of course, decree specific performance of a contract for the sale of land if it is valid at law, fairly entered into and unobjectionable in any of the features which address themselves to the judicial discretion of the chancellor.

5. SAME—*rule regarding certainty of description of land in a contract.* The description in a contract for the sale of land is not so uncertain as to prevent specific enforcement, if from the words employed the description can be made certain by extrinsic evidence of facts, physical conditions, measurements and monuments referred to in the contract.

6. SAME—*agreement to release indebtedness is good consideration.* An agreement by the vendee to release the indebtedness of the vendor to the amount agreed upon for the property is sufficient consideration for a contract for the sale of land in an action for specific performance. (*Davidson v. Burke,* 143 Ill. 139, distinguished.)

7. SAME—*when court cannot decree specific performance against a vendor.* A decree of specific performance for the sale of land can not be rendered against a non-resident vendor brought into court by publication, only.

8. SAME—*when court will compel third party to perform contract.* A third party who accepts a conveyance of land with full knowledge of a prior contract for its sale to another holds the land in trust for the original vendee, and a court of equity, having jurisdiction

of the subject matter and of the person of such third party, may compel the latter to perform the contract, even though it is without jurisdiction to enforce the decree against the vendor.

9. STATUTE OF FRAUDS—*when Statute of Frauds cannot be raised by demurrer.* The defense of the Statute of Frauds to a bill for specific performance of a contract to convey land can be raised by demurrer only, where it appears from the face of the bill that the contract is not evidenced by a writing duly signed.

10. SAME—*agent's alleged authority not presumed to be verbal where bill is demurred to.* Where a bill for specific performance, filed by the proposed vendee, alleges that complainant acted by her attorney and expressly authorized his acts, it will not be presumed, on demurrer, that such authority was verbal because the bill did not allege it was written.

11. SAME—*oral acceptance by vendee of vendor's written proposition is sufficient.* Oral acceptance by a proposed vendee of the written proposition of the vendor to convey land is sufficient to satisfy the Statute of Frauds, since the vendee is not the party "to be charged" in the contract.

APPEAL from the Circuit Court of Cook county; the Hon. ELBRIDGE HANECY, Judge, presiding.

This is a bill originally filed on December 5, 1901, in the Circuit court of Cook county by the appellant, Edna I. Fowler, against the appellee, Harriet Fowler, and Charles H. Fowler and Bernard Fowler, for the purpose of enforcing the specific performance of a contract, alleged to be embodied in certain letters which passed between Charles H. Fowler and the attorney of appellant. The appellant, Edna I. Fowler, is the daughter of Charles H. Fowler, and Harriet Fowler is her aunt, her father's sister, and Bernard Fowler is her grandfather, her father's father. To the bill, as originally filed, the letters in question were not attached as exhibits. The original bill was demurred to, and the demurrer was sustained. On February 15, 1902, the bill was dismissed as to Bernard Fowler, the grandfather. On February 20, 1902, appellant, by leave of court, filed an amended bill, to which thirteen letters, which passed between Charles H. Fowler and the attorney of appellant, were attached as exhibits. Harriet Fowler filed a general and special de-

murrer to the first amended bill, which was sustained by the court. Charles H. Fowler lived at Benton Harbor, Michigan, and publication was made as to him as a non-resident, but he was not personally served. Harriet Fowler lives in Cook county, and was personally served with process. Appellant also lives in Cook county, Illinois.

On October 23, 1902, the appellant, by leave of court, filed a second amended bill, to which the three letters hereinafter mentioned, dated September 26, September 30, and October 7, 1901, were attached as exhibits 1, 2 and 3. The second amended bill was sworn to by appellant's solicitor. Harriet Fowler filed a general and special demurrer to the second amended bill, which was sustained, and appellant took leave to amend, the amendment being filed to the second amended bill on January 12, 1903. A general and special demurrer was filed by Harriet Fowler not only to the second amended bill, but also to the amendments to the second amended bill. The court below sustained the demurrer to the second amended bill and the amendments thereto, and the appellant elected to stand by her bill. Thereupon, the second amended bill, as amended, was dismissed for want of equity, and execution ordered to issue in favor of the defendant, Harriet Fowler, for her costs. The present appeal is prosecuted from such decree of dismissal.

The second amended bill alleges that, on September 26, 1901, Charles H. Fowler was seized in fee of the following real estate in Cook county, Illinois, to-wit: An undivided one-sixth interest in the southerly twenty-five feet of the easterly one-half of the southerly fifty feet of lot 85 in Ellis' east addition to Chicago; also the southerly one-half of lot 11, being the southerly forty-one feet of said lot 11 of the county clerk's subdivision of lots 83, 84, 85, 86 and 87 in Ellis' east addition to Chicago; also the north six and one-half feet of lot 82 and the south twenty feet of lot 83 in Kenwood subdivision, in section 2, township 38 north, range 14 east; that said

real estate comprised and was the entire interest in real
estate in Chicago, acquired by Charles H. Fowler through
the estate of his mother, deceased; that on said date
Charles H. Fowler likewise owned an interest in other
real estate in Cook county, known as the Hayford ele-
vator property; that on said date Charles H. Fowler
made a written proposition for the sale to appellant of
all said property at $8000.00, including $4500.00 for his
interest in the Chicago real estate acquired from the es-
tate of his deceased mother, "which is the real estate
first herein described, and $3500.00 for said Hayford ele-
vator property;" that a copy of said proposition is at-
tached to the bill marked "Exhibit 1;" that said proposal
was accepted by appellant by letter addressed to Charles
H. Fowler, dated September 30, 1901, a copy of which
is attached to the bill and made a part thereof, marked
"Exhibit 2;" that, at the time of making said contract,
Charles H. Fowler was and still is a resident of St. Jo-
seph, Berrien county, Michigan; that he was indebted
to appellant at the dates of said letters in the sum of
about $15,000.00 for the proceeds of property, belonging
to appellant, sold by him, which he retained in his pos-
session, of which about $11,500.00 still remains due and
unpaid to appellant; that, by the letter of September 30,
1901, appellant agreed to pay for the real estate, so con-
tracted to be conveyed to her by Charles H. Fowler, by
giving him credit on said indebtedness for the purchase
price set by him upon the property; that Charles H.
Fowler thereafter wrote a letter, dated October 7, 1901, a
copy of which is attached to the bill, marked "Exhibit 3,"
and made a part thereof, and thereby requested that the
appellant's attorney procure the description of the real
estate, and prepare a warranty deed conveying the same
to appellant; that appellant thereafter caused said deed
to be prepared and sent to Charles H. Fowler for execu-
tion, and requested him to execute the same and return
it for record; that, in all of said dealings, appellant acted

by her attorney, Arthur W. Underwood, and expressly authorized and directed all of the acts and correspondence hereinbefore set forth.

The bill further alleges that, since October 7, 1901, Charles H. Fowler has conveyed to appellant, in accordance with his agreement, his interest in the property, known as the Hayford elevator property, and appellant has given him credit on said indebtedness for $3500.00 agreed upon between them, leaving still due and unpaid to appellant from Charles H. Fowler, the sum of about $11,500.00; that appellant has been at all times, since the making of said agreement, and is still ready and willing, and has already offered, and hereby again offers, to give Charles H. Fowler credit upon said indebtedness for the sum of $4500.00 in consideration of the conveyance to appellant of the real estate, first in the amended bill described; that appellant has requested him to make such conveyance to her as agreed, but he has continually refused and neglected, and still refuses, to make said conveyance; that appellant has always been ready and willing to comply with the terms of the agreement on her part; that she has caused to be prepared, and sent to Charles H. Fowler for execution, a proper deed of conveyance in due form; that he, as appellant is informed and believes, has executed said deed, but thus far has refused and neglected to turn over said deed of conveyance, and still refuses and neglects to do the same; that Harriet Fowler was advised of all said transactions and agreements between Charles H. Fowler and appellant, as and when the same occurred, and well knew that he had agreed to convey to appellant, and appellant had agreed to receive and pay for, as aforesaid, said one-sixth interest in the premises above described at the price of $4500.00, and that he was largely indebted to appellant and had already executed a deed of said premises to appellant, and was prepared to carry out the transactions on his part; yet that Harriet Fowler, for

the purpose of defrauding appellant out of the value of said premises, and preventing her from acquiring title thereto, and enabling Charles H. Fowler to escape from his said agreement, and to convert into money property agreed to be conveyed to appellant, conspired and confederated together with Charles H. Fowler and with Bernard Fowler, being the agent of Harriet Fowler in that behalf, and on or about October 28, 1901, took from Charles H. Fowler a conveyance of said one-sixth interest, held by him in the premises hereinbefore described; that said conveyance undertook to transfer to Harriet Fowler the title to said premises; that said deed has been placed on record in the recorder's office of Cook county, and thereby Charles H. Fowler and Harriet Fowler have conspired to make a pretended and fraudulent transfer of the title, held by Charles H. Fowler, to Harriet Fowler; that Charles H. Fowler has received from Harriet Fowler in payment of said fraudulent transfer $1000.00 in cash, and $3500.00 in notes, signed by Harriet Fowler and by her agent, Bernard Fowler, payable to the order of Charles H. Fowler, all being negotiable, and that Harriet Fowler pretends, in consideration of the transaction between herself and Charles H. Fowler, it was agreed that the latter should turn over to appellant the consideration so paid by Harriet Fowler to Charles H. Fowler for the said fraudulent conveyance; that all of said transaction was designed as a conspiracy, and a sham, for the purpose of interfering with, and preventing the completion of, the *bona fide* agreement between appellant and Charles H. Fowler for the purchase of said premises; that all said steps were taken by said Harriet Fowler with full knowledge of appellant's rights and dealings in the premises, and with full knowledge that, by reason of the agreement between appellant and Charles H. Fowler, appellant was and is the equitable owner of said premises; that Charles H. Fowler was and still is insolvent, and unable to pay his debts, and that

his financial condition was at all times well known to
Harriet Fowler; that said transaction was made with
the design to prevent appellant from securing title to
said property or recovering compensation for the injury,
loss and damage done to her; that all said steps, taken
by Harriet and Charles H. Fowler, were fraudulent and
void as against appellant; that Harriet Fowler holds the
title to said premises as trustee for appellant, and that
the pretended conveyance from Charles H. Fowler to
Harriet Fowler ought to be canceled and set aside as a
fraud upon appellant, and that defendant should be com-
pelled to convey said premises to appellant in accord-
ance with the contract of purchase aforesaid; and that
appellant offers to produce in open court the letters
before referred to, etc.

The bill prays that Charles H. and Harriet Fowler be
made defendants and required to answer, the oath being
waived; that said pretended conveyance from Charles
H. Fowler to Harriet Fowler may be canceled, annulled
and set aside as fraudulent and void as against appel-
lant, and that the rights of said Harriet Fowler there-
under may be declared and held to be void and of no
force and effect; that the title held by Harriet Fowler
may be decreed to be held by her as trustee for appellant,
and that she be decreed to release the same to appellant;
that Charles H. Fowler may be decreed to specifically
perform said agreement and to make and deliver to ap-
pellant a deed of conveyance to said premises, appellant
being ready and willing and hereby offering to specific-
ally perform said contract upon her part by crediting him
upon his indebtedness to her with the sum of $4500.00,
agreed upon as the consideration of said conveyance up-
on receipt of proper conveyance of said premises; and
that appellant may have such other and further relief
as equity may require, etc.

The amendments to the second amended bill merely in-
serted the sum of $11,500.00 as the indebtedness, instead

of the sum of about $15,000.00, and inserted attached cop-
ies of five additional letters, numbered exhibits from 1 to 4
inclusive, and exhibit 8.

The eight letters referred to in the second amended
bill and the amendments to it, are as follows:

A letter dated Benton Harbor, Mich., September 13,
1901, signed by C. H. Fowler and addressed to Arthur W.
Underwood, Esq., Chicago, to-wit:

"Your letter of the 12th at hand and carefully noted.
I say to you as I told Edna I would do, which is as fol-
lows: I would assign my interest in my mother's estate
and my equity in the elevator property to my father for
her benefit. Whatever is got out of the two properties
would go to her. This I am ready to do and have been.
As to signing over to her without any price set or agreed
on, I don't think there is any law that can make me do it.
All I want is to be protected and make the property pay
what there is really in it. The estate has been held by
my father for three years. All the heirs have confidence
in him to handle to get the most out of it. I am ready
at any time to assign to him for Edna's interest, which
she runs no risk in getting. Any one has a right to as-
sign his property for the benefit of his creditors. I am
ready to make such papers at any time. As to signing
the papers you sent over, I will not do unless a satisfac-
tory price set, then I will turn over, but no other way."

A letter dated September 16, 1901, signed by Arthur
W. Underwood and addressed to Charles H. Fowler at
Benton Harbor, Mich., as follows, to-wit:

"Your letter of the 13th is at hand and contents care-
fully noted. I have, since receiving it, consulted with
your daughter, Miss Edna Fowler, and beg to state in
reply, as follows:

"Miss Fowler would prefer that such property or inter-
ests in property as she may receive from you should be
transferred directly to herself, and not placed on trust
with any other person for her benefit. This is not for

the reason that she lacks confidence in your father or in yourself, or any other person, but being now of age she feels that it is her duty, as well as her right, to manage her own affairs, and she would much prefer, and will insist, that any transfer for her benefit be made to herself.

"You indicate in your letter that upon an agreement as to price you would see no special objection to carrying out the proposal made by me, even though the terms were not exactly followed. Of course this is a suggestion along the line which we were naturally ready to consider. I should be glad to have you advise me by return mail as to what you consider a satisfactory price for the property interests of which mention has already been made. I might say that Miss Fowler tells me you have offered to transfer your interest in your mother's estate for the sum of $3000.00, and that the interest which you have in the elevator, being a difference between the contract price of $7500.00 under which it is now held and the debt of $4000.00 owed by you to the vendor, is approximately $3500.00. Kindly advise me by return mail, as already stated, what you are willing to do in the matter of price. We will give you a prompt answer, and if we cannot get together, beg to assure you that there will be no delay in getting at some conclusion one way or another. This is said not by way of threat, but in appreciation of the spirit in which your letter is written, and to advise you that negotiations will be carried on in a corresponding spirit if you promptly comply with our reasonable request."

Also a letter dated September 23, 1901, signed C. H. Fowler, and addressed to A. W. Underwood, of Chicago, Illinois, as follows:

"As soon as I can get values of property in neighborhood of ours, will tell you what I will be willing to price it at. I never offered my interest for $3000.00 to any one. Will write you as soon as I hear."

A letter dated September 24, 1901, signed by Arthur
W. Underwood, and addressed to C. H. Fowler of Benton
Harbor, Mich., as follows:

"I have your letter of September 23, and note its con-
tents. I shall expect a further answer as early as you can
possibly get the facts in your possession. I don't suppose
you will want to make us the same offer you have made
to other people, but the information I have is very definite
as to your offer of $3000.00. However, that is a matter
which, as already stated, does not bind you in dealing
with us. Kindly let us hear from you, as requested."

Also a letter dated Benton Harbor, Mich., September
26, 1901, signed by C. H. Fowler and addressed to A. W.
Underwood of Chicago, Illinois, as follows:

"Your letter came to hand and noted. Would say I
am willing to assign over to Edna my interest in my
mother's estate (the Chicago real estate) at $4500.00.
The elevator, $3500.00, subject to Sidwell's lien, in all
$8000.00. I never offered any one my interest in the es-
tate for $3000.00. This price is much less than it was
purchased for many years ago. If this satisfactory, I
am ready to assign any time."

Also letter dated September 30, 1901, signed by A. W.
Underwood and addressed to Charles H. Fowler, Benton
Harbor, Mich., as follows:

"In answer to your letter of recent date, I beg to say
that your proposition is accepted by Miss Edna Fowler,
upon condition that she is furnished with instruments
satisfactorily vesting in her the title to the property
which you mention. Will you kindly forward to me the
legal description of the property in which you are inter-
ested, including both the elevator property and the real
estate which formerly belonged to the estate of your
mother and in which you are now interested. I expect
it will be necessary, in order to cover all possible con-
troversy, that you give to Miss Fowler an assignment
of the contract which you hold for the purchase of the

elevator property and of your interest in the lease and contract of sale; also that you give her a quit-claim deed covering the property by its legal description. In regard to the estate of your mother, I think we should have an assignment of the interest which you hold, and also the conveyance of your undivided interest in the real estate held by the estate, describing it by its legal description. If you will furnish me the proper description of the real estate and dates of the contracts referred to, together with the names of the parties to the contracts, so that I can properly draw assignments of the same, I should be glad to put them in shape. Miss Fowler will take the property at the price named by you, to-wit, $8000.00, on account of the indebtedness which exists between yourself and her."

Also a letter dated Benton Harbor, October 7, 1901, signed by C. H. Fowler and addressed to A. W. Underwood of Chicago, Illinois, as follows:

"Your message came to hand. You can go to the probate records and get numbers of the property, 3622 Lake ave. I do not know the numbers. It is the second door north, forty feet front, and 4561 Lake ave. You can make warranty deed to Edna for the undivided one-sixth interest. By going to Mr. Sidwell's office you can get copy of my contract with him; also lease, which I assign to Edna. Consideration of the first to be $4500.00; the elevator property, $3500.00; Edna assuming the conditions of the contract. This can be done as well as waiting until father gets the numbers for me. You will find the records of the estate of Martha Fowler filed some time about January 1, 1898."

Also a letter dated October 8, 1901, signed by Arthur W. Underwood and addressed to Charles H. Fowler, Benton Harbor, Mich., as follows:

"I have your letter of the 7th, and will immediately take up the matter of papers and get the whole thing closed."

ARTHUR W. UNDERWOOD, and J. A. BLOOMINGSTON, for appellant:

If a contract is valid at law, fairly entered into and unobjectionable in any of its features which address themselves to judicial discretion, a court of equity is equally bound with a court of law to grant the appropriate relief. Pomeroy's Eq. Jur. sec. 404; *McClure* v. *Otrich*, 118 Ill. 320; *Hamilton* v. *Harvey*, 121 id. 469; *Winter* v. *Trainor*, 151 id. 191.

By judicial discretion is meant sound legal discretion, and not the mere pleasure of the judge. *Barrett* v. *Geisinger*, 179 Ill. 248.

Where a contract is fair in its provisions, mutual, capable of being performed and for an adequate consideration, courts of equity will enforce it specifically. *Winter* v. *Trainor*, 151 Ill. 191.

When the property in controversy in a suit for specific performance is within the jurisdiction of a court and defendant is outside the jurisdiction, the court has power to bind the property by decree, and service by publication on defendant is sufficient. *Rourke* v. *McLaughlin*, 38 Cal. 196; *Adams* v. *Hecksher*, 80 Fed. Rep. 942; 83 id. 281.

One who receives a conveyance of land with knowledge of the prior contract for its sale to another, holds the land as trustee for the original vendee. Pomeroy on Specific Perf. sec. 465; *Bryant* v. *Booze*, 55 Ga. 438.

ALFRED D. EDDY, and JAMES A. FULLENWIDER, for appellee:

The original and amended bills having been sworn to, it was necessary that the amendment be also sworn to. *Gregg* v. *Brower*, 67 Ill. 525.

There is no legal or other sufficient description of any property set forth in the letters which it is alleged form the contract sought to be enforced, and it is not competent to resort to parol evidence to determine what property was meant. The entire contract must be in writing.

*Glos* v. *Wilson,* 198 Ill. 44; *Brix* v. *Ott,* 101 id. 70; 2 Starr & Cur. Stat. sec. 2, p. 1997; *Seymour* v. *Belding,* 83 Ill. 222; *Wright* v. *Raftree,* 181 id. 464; *Cloud* v. *Greasley,* 125 id. 313.

The consideration alleged was past and executed at the time the letters alleged to form the contract were written, and that consideration will not sustain the alleged promise or agreement. *Mills* v. *Wyman,* 3 Pick. 207; Bishop on Contracts, sec. 90, p. 36, note 5; *Moran* v. *Peace,* 72 Ill. App. 135; *Davidson* v. *Burke,* 143 Ill. 139.

The appellant was not bound by the letters of Underwood to carry out any of his proposals, and therefore she is powerless to enforce the supposed contract against Charles H. Fowler or appellee. 2 Beach on Contracts, sec. 885; *Tryce* v. *Dittus,* 199 Ill. 189; *Baird* v. *Linthicum,* 1 Md. Ch. 345; *Duval* v. *Meyers,* 2 id. 401.

A proposition must be accepted in the precise terms in which it is made in order to be binding on the proposer as a contract, which was not done or alleged in the second amended bill. *Bentz* v. *Eubanks,* 41 Kan. 28; *Erickson* v. *Wallace,* 45 id. 430; *Shields* v. *Horbach,* 30 Neb. 536.

No authority in writing is shown in the alleged correspondence authorizing Arthur W. Underwood to act for the appellant, as required by the Statute of Frauds, and therefore she could have repudiated the whole transaction at any time. If appellant was not bound by that correspondence, then she cannot now, at her election, bind C. H. Fowler or this appellee. See cases last above cited; *Bickett* v. *White,* 27 Ohio St. 405; *Lasher* v. *Gardner,* 124 Ill. 441; 2 Starr & Cur. Stat. sec. 2, p. 1997.

A suit for specific performance is an action *in personam,* and not *in rem,* and the vendor not being before the court, specific performance cannot be decreed against him, even if the alleged agreement were valid. The second amended bill prays that the vendor be decreed personally to convey to appellant. *Felch* v. *Hooper,* 119 Mass. 52; *Walling* v. *Baers,* 122 id. 548; *Spurr* v. *Scoville,* 57 id. 578; *Hart* v. *Sansum,* 110 U. S. 115; *Cloud* v. *Greasley,* 125

Ill. 313; *Massie* v. *Watts*, 6 Cranch, 158; *Penn* v. *Hayward*, 14 Ohio St. 302; *Investment Co.* v. *Gardiner*, 62 Fed. Rep. 954.

Whether a court of equity will decree specific performance of a contract rests in the sound discretion of the court; and such discretion, when exercised, will not be reviewed or reversed by this court except for a clear abuse. Fry on Specific Perf. 10; *Bowman* v. *Cunningham*, 78 Ill. 48; *Tryce* v. *Dittus*, 199 id. 189; *DeWolf* v. *Pratt*, 42 id. 198; *Hamilton* v. *Payne*, 103 Ill. App. 212; *Beach* v. *Dyer*, 93 Ill. 296; *Hetfield* v. *Miller*, 105 id. 286.

Charles H. Fowler having conveyed the premises is now powerless to perform specifically. Under such circumstances courts of equity cannot decree specific performance, and will not undertake to do a vain or impossible thing. 22 Am. & Eng. Ency. of Law, (1st ed.) 1018, and cases in note 1; *Hurlbut* v. *Kantzler*, 112 Ill. 482; *Kennedy* v. *Hazleton*, 128 U. S. 667; *Sellers* v. *Greer*, 172 Ill. 549.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

*First*—The first ground, upon which appellee seeks to sustain the decree of the lower court, is that the amendments to the second amended bill were not sworn to. It is said that, inasmuch as the second amended bill was sworn to, the amendments to it should also have been sworn to. The fact, that a bill is verified by affidavit, does not necessarily deprive the complainant of the benefit of an amendment. Amendments to bills in chancery are allowed with great liberality in furtherance of justice until the proofs are closed when the bill is not under oath, but greater caution is exercised in regard to amendments to bills where they are sworn to. A complainant is undoubtedly estopped from so amending his bill as to contradict facts, which he has sworn to as positively true, unless he can clearly show the court that the statement was made in mistake. But when an amendment only enlarges and amplifies a statement in

the bill, it may be made without being sworn to. (*Marble v. Bonhotel*, 35 Ill. 240; *Gregg* v. *Brower*, 67 id. 525; *Booth* v. *Wiley*, 102 id. 84). Of such a character were the amendments here made. Appellee demurred to the amendments to the second amended bill, as well as to the second amended bill itself, and she thereby admitted all the statements therein to be true. This being so, it makes no difference whether an affidavit was attached to the amendments to the second amended bill or not. There can be no necessity for a verification of the facts by oath when such facts are admitted by the adverse party upon the record. By the demurrer, appellee waived her objections to the second amended bill and its amendments in this respect. (*Keach* v. *Hamilton*, 84 Ill. App. 413).

Appellee is also estopped from claiming that the additional letters, attached as exhibits to the amendments, were not made a part of the amended bill, because the demurrer is a demurrer to the second amended bill and the amendments thereto, thereby admitting that the letters attached are included in the amendments to the bill.

*Second*—It is claimed by appellee that the second amended bill, either with or without the amendments thereto, does not show an agreement which is complete, certain, fair and just in all its parts, so as to entitle appellant to a specific performance of the alleged contract. (*Tryce* v. *Dittus*, 199 Ill. 189). Under this head it is said that the letter of September 26, 1901, refers to "Edna" without stating what Edna is meant. The very next letter, dated September 30, 1901, in which the proposition, contained in the letter of September 26, is accepted, states as follows: "Your proposition is accepted by Miss Edna Fowler." A prior letter of September 16, 1901, written to Charles H. Fowler refers to a consultation "with your daughter, Miss Edna Fowler." This, and other parts of the correspondence, clearly indicate that the Edna referred to is the appellant. In the letter of September 26, 1901, C. H. Fowler expresses his willingness "to assign

over to Edna my interest in my mother's estate (the Chicago real estate) at $4500.00." It is said that the words, "my mother's estate," make the description of the real estate uncertain and indefinite upon the alleged ground that "there is no such governmental subdivision of real estate as 'my mother's estate.'" (*Glos* v. *Wilson*, 198 Ill. 44). The reference to C. H. Fowler's interest in his mother's estate, taken in connection with other letters which will be hereafter referred to, makes the description of the real estate sufficiently certain and definite. It is said, also, that the propositions of C. H. Fowler, as embodied in his letters, were coupled with conditions. One of these conditions was, that his assignment of his interest in his mother's estate and of his equity in the elevator property should be to his father, Bernard Fowler, for the benefit of his daughter, Edna I. Fowler. Subsequent letters, however, show that he did not insist upon having the conveyance made to his father in trust for his daughter, because he says in one letter that he will assign his interest directly to Edna herself, and in another letter he tells her attorney to make out a warranty deed for the undivided one-sixth interest owned by him in his mother's estate directly to his daughter, Edna. The complaint is furthermore made that, in the letter of September 26, 1901, addressed by Fowler to Underwood, the value of his interest in his mother's Chicago real estate is placed at $4500.00, and in the elevator property at $3500.00, subject to a certain lien, making $8000.00 in all, but that nothing is therein stated about the price being credited upon the indebtedness claimed by appellant to be due to her from her father, and that, therefore, the presumption is that the price was to be paid in cash, and not in property.

It appears, however, from the letter of September 30, 1901, written by A. W. Underwood to Charles H. Fowler, that the following statement is made: "Miss Fowler will take the property at the price named by you, to-wit, $8000.00, on account of the indebtedness, which exists be-

204—7

tween yourself and her." The second amended bill, and the amendments thereto, allege this indebtedness to be $15,000.00, or, as reduced by the application thereto of $3500.00, the agreed valuation of the elevator property, to be $11,500.00, and this allegation as to the amount of the indebtedness is admitted to be true by the demurrer.

It appears from the allegations of the bill, and the letters thereto attached, that Charles H. Fowler owed his daughter, the appellant, $15,000.00 for money, which he had obtained from the sale of her property and failed to turn over to her. In part settlement of this indebtedness, he agreed to turn over his interest in certain elevator property at Hayford, and the one-sixth interest in his mother's estate, consisting of land on Lake avenue in Chicago, to the appellant. The negotiations between appellant's attorney and Charles H. Fowler ended in a contract, as shown by the letters, whereby he was to repay his indebtedness to the extent of $8000.00 by turning over his interest in the above mentioned property. His interest in the elevator property was actually transferred and assigned to his daughter, and he was given credit therefor to the extent of $3500.00 upon his indebtedness, thereby reducing it to $11,500.00. We think the letters show an agreement upon his part to transfer to his daughter his one-sixth interest in his mother's real estate in Chicago in payment of an additional $4500.00 of his indebtedness, and to convey said interest to his daughter by a warranty deed. This deed, according to the allegations of the bill which were admitted to be true by the demurrer, was actually drawn up and sent to him to be executed, but he refused to do so. Instead of conveying his interest in his mother's estate to his daughter in accordance with the agreement, he conveyed the same to his sister, Harriet Fowler, although being insolvent at the time, and took back from her $1000.00 in cash and $3500.00 in notes, signed by her and by his father, Bernard Fowler, and payable to his own order.

The bill alleges, and the allegation is admitted by the demurrer to be true, that, when Harriet Fowler took this conveyance from her brother, Charles H. Fowler, she knew of the previous agreement he had made with his daughter to transfer the property to the latter. It is also alleged and admitted by the demurrer to be' true, that the transfer to Harriet Fowler was a fraud as against Edna Fowler, and was made for the purpose of depriving her of the property, which her father had agreed to convey to her. This bill is for the purpose of compelling the specific performance of the contract, by which Charles H. Fowler agreed to convey his interest in his mother's estate to his daughter in consideration of receiving a credit of $4500.00 upon his indebtedness to her. We are unable to see why the appellant was not entitled to the relief prayed in her bill, and will only notice some of the main reasons why appellee urges that the trial court correctly sustained the demurrer to the bill.

*Third*—It is true that an application for the specific performance of a contract is addressed to the sound legal discretion of the court, and that, even where a legal contract is shown to exist, it will not be decreed as a matter of course. (*Bowman* v. *Cunningham,* 78 Ill. 48; *Tryce* v. *Dittus,* 199 id. 189). But the discretion of the court in such cases must be exercised according to settled principles of equity, and not arbitrarily. (*Barrett* v. *Geisinger,* 179 Ill. 240). A court of equity will, as a matter of course, grant the specific performance of a contract for the conveyance of land where it is valid at law, fairly entered into, and unobjectionable in any of its features, which address themselves to the judicial discretion of the chancellor. In such case, a court of equity is equally bound with a court of law to grant the appropriate relief when properly applied to for that purpose. (*McClure* v. *Otrich,* 118 Ill. 320; 3 Pomeroy's Eq. Jur. sec. 1405). In his work on Equity Jurisprudence, Pomeroy says, (sec. 1404): "The granting the equitable remedy is, in the language ordi-

narily used, a matter of discretion, not of an arbitrary capricious discretion, but of a sound judicial discretion, controlled by established principles of equity, and exercised upon a consideration of all the circumstances of each particular case."

It is well settled that, where the description of the property in a contract for the sale of real estate is uncertain, the contract will not be specifically enforced. (*Glos* v. *Wilson*, 198 Ill. 44; *Hamilton* v. *Harvey*, 121 id. 469). Where land is the subject matter of such a contract, it should be so described as to leave no uncertainty as to its quantity, shape and location. But a written contract for the conveyance of land is not void for uncertainty in the description of the land sold or conveyed, if from the words employed the description can be made certain by extrinsic evidence of facts, physical conditions, measurements or monuments referred to in the deed. (*Hayes* v. *O'Brien*, 149 Ill. 403). In *Hamilton* v. *Harvey*, *supra*, it appears that a contract, mentioned in a case therein referred to, described certain tracts of land as all the land a party "owned and held contracts for in the township of Harrington;" and it was held that this description was sufficiently certain, it being there said: "The maxim is, *id certum est quod certum reddi potest*. It can be shown with certainty what lands he owned or held contracts for in these boundaries."

In the case at bar, we think that the letters introduced in evidence show a sufficient description of the land intended to be conveyed. In the letter of September 13, 1901, Charles H. Fowler says: "I would assign my interest in my mother's estate and my equity in the elevator property." In the letter of September 26, 1901, he says: "I am willing to assign over to Edna my interest in my mother's estate (the Chicago real estate) at $4500.00. The elevator, $3500.00, subject to Sidwell's lien, in all $8000.00. * * * If this is satisfactory I am ready to assign any time." In the letter of September 30, 1901, appellant's

attorney says: "I beg to say that your proposition is accepted by Miss Edna Fowler, upon condition that she is furnished with instruments. satisfactorily vesting in her the title to the property which you mention. Will you kindly forward to me the legal description of the property, in which you are interested, including both the elevator property and the real estate, which formerly belonged to the estate of your mother, and in which you are now interested? * * * Miss Fowler will take the property at the price named by you, to-wit, $8000.00 on account of the indebtedness which exists between yourself and her." In the letter of October 7, 1901, C. H. Fowler, in answer to the letter asking for a legal description of the property, says to appellant's attorney: "You can go to the probate records and get numbers of the property, 3622 Lake avenue. I do not know the numbers; it is the second door north, forty feet front, and 4561 Lake avenue. You can make warranty deed to Edna for the undivided one-sixth interest. By going to Mr. Sidwell's office you can get copy of my contract with him. Also lease, which I assign to Edna. Consideration of the first to be $4500.00; the elevator property $3500.00, Edna assuming the conditions of the contract. * * * You will find the records of the estate of Martha Fowler filed some time about January 1, 1898." These letters sufficiently described the property, so that it could be identified. The street numbers are given, and the records of the estate, where the property belonging to the estate is described, are mentioned as the proper source for the ascertainment of the legal description. It is apparent that, from the words employed in these letters, the description can be made certain, so that the contract can not be regarded as void for uncertainty. Moreover, the second amended bill specifically describes certain property, in which a one-sixth interest was owned by Charles H. Fowler as being located in Ellis' east addition and Kenwood subdivision, giving the numbers of the lots, etc.,

and alleges that such interest in the property so described was the interest in the Chicago real estate acquired by Charles H. Fowler in his deceased mother's estate; and this allegation is admitted by the demurrer to be true.

*Fourth*—It is said by the appellee that there was no consideration for the contract, upon the theory that "a past and executed consideration is not sufficient to sustain a new contract based thereon." Here, there was not a past and executed consideration, but a present and new consideration, to-wit, an agreement to release a portion of the indebtedness of $15,000.00, to-wit, $8000.00, for the transfer of real estate, which both parties agreed to value at $8000.00. The agreement to release $8000.00 of this indebtedness was clearly a sufficient consideration upon which a contract of this character could be based. Appellee refers to the case of *Davidson v. Burke*, 143 Ill. 139, as sustaining the contention that the present contract is without a valid consideration. In that case a creditor sought to release a debtor by payment of one-half of his indebtedness. The debtor was a joint debtor, and was under obligations to pay the full amount. The promise was there held to be *nudum pactum*, because there was no consideration to support it for the reason that an agreement to pay one-half of an obligation would not form any consideration for a release of the whole, and to release the joint debtor the full amount must necessarily have been paid. The case, however, has no bearing here.

*Fifth*—It is furthermore contended by the appellee that Arthur W. Underwood, who wrote the letters in behalf of appellant, is not shown to have had any written authority to represent her, or to make any propositions for her. The bill alleges that appellant acted by her attorney, Arthur W. Underwood, and expressly authorized and directed all of his acts and correspondence. This allegation of the bill is admitted to be true by the demurrer. It is true that there is nothing upon the face

of the bill to show whether Underwood was authorized in writing, or not. But it will not be presumed that his authority was a mere verbal one, and within the Statute of Frauds, because the bill does not allege that his authority was in writing. "The benefit of the Statute of Frauds, as a defense, can be taken by demurrer only when it affirmatively appears from the bill that the agreement relied upon is not evidenced by a writing duly signed." (*Hamilton* v. *Downer*, 152 Ill. 651). Inasmuch as it does not affirmatively appear from the bill in this case, that the authority of Underwood is not evidenced by a writing duly signed, the Statute of Frauds cannot be used as a defense by demurrer. (See also *Speyer* v. *Desjardins*, 144 Ill. 641). The person, charged in the contract for the sale of the land was Charles H. Fowler. If he had sought to act through an agent, such agent would be required to show written authority. But, in the present case, Underwood, acting in behalf of appellant, was merely negotiating a settlement, and his principal was not the party charged in the contract to transfer the land. In other words, the contract for sale of land need only be signed by the party to be charged, which party in this case was Charles H. Fowler, and not Edna I. Fowler. If Edna I. Fowler had accepted orally the written proposition of Charles H. Fowler to transfer the land to her as a credit upon his indebtedness, it would be sufficient to satisfy the Statute of Frauds. (*Farwell* v. *Lowther*, 18 Ill. 252; *Esmay* v. *Gorton*, 18 id. 483; *McConnell* v. *Brillhart*, 17 id. 354).

*Sixth*—The main ground, however, upon which the appellee seeks to sustain the decree of the court below, is the alleged ground that the court was without jurisdiction to grant the relief prayed for. The contention upon this branch of the case is, that, in order to decree the specific performance of a contract, a court of equity must have personal jurisdiction of the party, who signed the contract, and against whom performance is sought to be

enforced. In other words, the position, taken by counsel, is that the proceeding for specific performance of a contract is an action *in personam*, and not *in rem*. We deem it unnecessary, for the purposes of this decision, to discuss the question whether such a proceeding as the present one is a proceeding *in rem*, or a proceeding *in personam*, or a proceeding partly *in rem* and partly *in personam*.

Charles H. Fowler is a non-resident of Illinois, and was not personally served, but was only brought in by publication, and we are inclined to think that a decree could not be entered against him for the specific performance of the contract here under consideration. (*Hayes* v. *O'Brien*, 149 Ill. 403; *Johnson* v. *Gibson*, 116 id. 294; *Cloud* v. *Greasley*, 125 id. 313). In the case at bar, however, the title to this property is in Harriet Fowler. The bill alleges that Charles H. Fowler, in violation of the contract with his daughter, transferred the property to his sister, Harriet Fowler, and that she had full knowledge of the contract between him and appellant, and was not a *bona fide* purchaser. One part of the prayer of the second amended bill is as follows: "That the title held by said Harriet Fowler may be decreed to be held by her as a trustee for your oratrix, and that she be decreed to release the same to your oratrix." Harriet Fowler was a necessary party to the bill. She is a resident of Cook county, and the land in controversy is located in Cook county. The court has before it the party, who holds the legal title, and can order the transfer of that title by the party, so holding it, to appellant for whom, in equity, it is held in trust.

In Story's Equity Jurisprudence (vol. 1,—12th ed.— sec. 784) it is said: "If a person has in writing contracted to sell land, and afterwards refuses to perform his contract, and then sells the land to a purchaser with notice of the contract, the latter will be compelled to perform the contract of his vendor, for he stands upon the same equity; and although he is not personally liable on the

contract, yet he will be decreed to convey the land in the same manner as his vendor; in other words, he is treated as a trustee of the first vendee." In section 789 of the same book, it is further said: "The general principle, upon which this doctrine proceeds, is, that from the time of the contract for the sale of the land the vendor, as to the land, becomes a trustee for the vendee, and the vendee, as to the purchase money, a trustee for the vendor, who has a lien upon the land therefor. And every subsequent purchaser from either, with notice, becomes subject to the same equities, as the party would be, from whom he purchased." Here, Charles H. Fowler contracted in writing to sell this land to the appellant, and afterwards refused to perform his contract, and conveyed the land to his sister, Harriet Fowler, who had notice of the contract. It follows, that Harriet Fowler can be compelled to perform the contract of her vendor, for she stands upon the same equity as her vendor, Charles H. Fowler. Although she is not personally liable on the contract, she will be decreed to convey the land in the same manner as Charles H. Fowler would be compelled to convey it.

In Pomeroy on Specific Performance (sec. 465) it is said: "When the vendor, after entering into a contract of sale, conveys the land to a third person, who has knowledge or notice of the prior agreement, or who does not part with a pecuniary consideration, or who for any other reason is not a *bona fide* purchaser, such grantee takes the land impressed with the trust in favor of the original vendee, and holds it as trustee for such vendee, and can be compelled at the suit of the vendee to specifically perform the agreement by conveying the land in the same manner and to the same extent, as the vendor would have been liable to do had he not transferred the legal title; and such grantee is the proper defendant in the suit against whom to demand the remedy of a conveyance." The doctrine, thus announced by the learned author, fits preicsely the facts of this case; and Harriet Fowler, the

present appellee, is the proper defendant, against whom the remedy of a conveyance may be enforced.

In *Bryant* v. *Booze*, 55 Ga. 438, it is held, in substance, that, where a contract for the sale of real estate is made, and subsequently the vendor conveys to a third party, said third party knowing of the prior contract, such third party takes the land impressed with the trust in favor of the original vendee, and holds it as trustee for such vendee, and can be compelled, at the suit of the vendor, to specifically perform in the same manner and to the same extent as the vendor.

We do not concur in the contention of counsel that the court below was without jurisdiction to decree a specific performance against appellee, Harriet Fowler, even though it was without jurisdiction to enforce the decree against Charles H. Fowler, who was not personally served with process.

For the reasons above stated, we are of the opinion that the court below erred in sustaining the demurrer to the second amended bill, as amended, and in dismissing the bill. Accordingly, the decree of the circuit court is reversed, and the cause is remanded to that court for further proceedings in accordance with the views herein expressed.                     *Reversed and remanded.*