## Oliver Marble
### v.
## Henry P. Bonhotel.

1. **What may be assigned as error** — *of granting injunctions.* The granting of a temporary injunction, either by a court or by a judge in vacation, is a matter of sound discretion, and cannot be reviewed on error or appeal.

2. But on the final hearing, it is error for the court to wrongfully make it perpetual, or to wrongfully refuse to do so; and such decree may be reviewed in an appellate court.

3. **Amendments in chancery** — *when allowed.* A court of equity is liberal in permitting amendments of the pleadings, that complete justice may be done.

When allowed, if necessary, terms will be imposed, that undue advantage may not be obtained by the party asking the favor.

4. So the complainant may be allowed so to amend his bill as to conform to the proofs which may have been taken, even after answer filed, and a motion to dissolve an injunction in the cause.

5. Nor does the fact that the bill is verified by oath necessarily deprive the complainant of the benefit of an amendment.

6. It is, however, no doubt true that he is estopped from so amending his bill as to contradict facts which he has sworn to as positively true, unless he can clearly show the court that the statement was made in mistake. But when it only enlarges and amplifies the statement, or states additional facts, there is no objection to allowing the amendment to be made.

7. NOTICE — *application for change of venue.* The statute requires that notice of an intended application for a change of venue shall be given to the opposite party. This requirement cannot be dispensed with, unless formally waived by the party entitled to the notice.

8. CONTINUANCE — *it must be availing to the party asking it.* A defendant in chancery asked a continuance of the cause upon the ground of the absence of certain witnesses, by whom, it appears, he only expected to prove such facts as related to issues which had been already tried and found by a jury by his consent. It was held, such testimony could not have been material for any purpose at that stage of the proceedings, and the continuance was properly refused.

9. SAME — *diligence.* Upon an application for a continuance, upon the ground of the absence of witnesses, it will not be deemed sufficient diligence on the part of the one making the application merely to issue a subpœna for the witnesses, unless it appears that their depositions could not be taken. Having the right to take their depositions, the party desiring the continuance cannot neglect to procure their testimony in that mode, and rely upon their attending as witnesses under a subpœna, without some good reason for so doing.

10. VERDICT OF A JURY IN CHANCERY — *how far conclusive.* Where the parties in a suit in chancery submit issues of fact to a jury, the decree based upon their finding will not be disturbed if the evidence preponderates in favor of the verdict. A case of this character, like any other, must be governed by the rule that a verdict will not be disturbed by the appellate court for mere doubt as to the proof of a fact. Demonstration is not to be expected in the determination of disputed questions of fact. Generally, only a preponderance of proof can be expected.

WRIT OF ERROR to the Circuit Court of Jo Daviess county; the Hon. BENJAMIN R. SHELDON, Judge, presiding.

Henry P. Bonhotel exhibited his bill in chancery in the court below, against Oliver Marble. The case as presented in the original bill, is as follows::

16 — 35TH ILL.

Complainant is a miner by trade, and with Joseph Wise, also a miner, in March or April, A. D. 1862, engaged together as partners in prospecting for lead ore on the mineral land of Mrs. Kamphouse and Elizabeth Kamphouse, her daughter, situate in Rice township, Jo Daviess county, Illinois, and discovered a small lead or vein of mineral, and thereby, by the custom of miners and those owning mineral lands, as well as by the implied consent of the owners of said land, acquired the right and privilege of working said lead so long as they might choose to do, or until the mineral in said mine or claim should be exhausted, paying one-sixth of all mineral raised to the owner of said land as ground rent.

That complainant and Wise were equal partners, each paying one-half of the expenses, and receiving one-half the proceeds of the mineral raised, with the privilege that either might substitute another person in working his interest, in case of sickness or unwillingness to work his interest; and either reserved permission to rent or sell out his interest in said claim if he saw proper, without interfering with the rights of the other.

Complainant wishing to enlist in the army, rented his interest in said mine to one Comstock Colonky, his brother-in-law. Colonky was to furnish the labor and expense of working complainant's interest, and to receive therefor the first six thousand pounds of mineral belonging to complainant's interest, after paying ground rent, and after that to receive, one-half of complainant's half, or one-fourth of the whole proceeds, after paying ground rent, thus leaving complainant one-fourth of the whole proceeds, after paying ground rent, clear to his use, and complainant appointed his father, Peter Bonhotel, his agent to look after his interests in his absence, and that this contract was to continue until complainant's return from the war. This arrangement with Colonky continued until the 25th of December, 1862, when by consent of complainant and complainant's agent, Colonky sold out his right to work said mine to Oliver Marble, for twenty dollars, and the said Marble agreed to carry out Colonky's contract and agreement with complainant as

aforesaid, and work his interest in said mine for him, as Colonky agreed to do, for three years or until complainant's return from the war.

Alleges faithful performance of complainant's part of the contract, and willingness still to perform his part. Alleges also a great expense of labor, money and material in the discovery of said mine, opening the same and reaching the mineral, and that complainant and Wise had taken out only a small quantity of mineral before the contract with Colonky, and that Colonky had taken about three thousand and twenty pounds of mineral as his share under the contract before the sale to Marble.

That soon after the sale to Marble, Marble and Wise began to take large quantities of lead mineral out of the said lead or vein which had been struck by complainant and Wise, and it became a large lead.

That the said Marble, though often requested, refused to pay over any part of the proceeds to complainant or his agent, pretending that he was entitled to the whole proceeds of complainant's half of said lead, and complainant avers he has no other right than as above stated.

That up to the 9th day of March, A. D. 1863, said Marble & Wise had sold to Hughlett & Son about sixty thousand pounds of mineral, forty-eight thousand pounds of which they sold at $46 per ton, and the balance at from $50 to $53 per ton, and that Marble had received his own and complainant's share of the proceeds of said forty-eight thousand pounds, and the balance was in the hands of Hughlett & Son.

Avers the want of pecuniary responsibility of Marble, and seeks to restrain him on that ground from collecting the money in the hands of Hughlett & Son, and also from selling any mineral raised on said mine, or authorizing any one else to do so for him.

The oath of defendant, Marble, is waived. The complainant prays an account and payment of his share, and also the specific performance of the contract in working the mine, and for general relief. The bill was sworn to.

An injunction was granted in accordance with the prayer of the bill.

The defendant answered the bill as follows :

Denies that complainant and Wise ever discovered, or worked or owned the mineral range claimed by defendant and Wise, and worked by them jointly, known as Marble's lead; but admits that complainant and Wise did prospect near there, but without finding mineral except in small quantities, too little to pay for working, and that defendant Marble bought Wise's interest in said range. Admits a contract between Colonky and complainant in regard to working the range discovered by Wise and Bonhotel, but denies that complainant fully performed his part of said contract, and avers that Colonky got tired of working said range, and stopped for want of means.

That defendant ascertained that Colonky had full power and authority from complainant to act for him in his absence, in the matter of prospecting and mining on said range, and to get rid of a partner who paid no part of the expense of mining after his enlistment, purchased of Colonky, as said complainant's agent, all the right of said complainant in the range formerly worked by complainant and defendant in partnership, for the sum of twenty dollars.

That thereby said partnership ceased, and defendant worked thereafter for himself alone, in prospecting on and discovering and working the range now known as Marble's lead or diggings, a separate and distinct range from the one formerly worked by complainant and defendant. And defendant relies on the fact that it is a distinct and separate range, and that complainant never had any right, title or interest in the diggings now known and called " Marble's diggings," which is an entirely distinct and separate range from the Bonhotel and Marble range, and that the mineral spoken of in the bill was raised in the new range called Marble's diggings, and not in the old range in which Bonhotel had once an interest.

Avers abandonment of claim and failure to work them long before the last range known as Marble's diggings was discovered.

Upon filing his answer, the defendant entered his motion

to dissolve the injunction. On the 10th of March, 1863, this motion was partially heard, and its further examination postponed until the following day. On the 21st of March, there was a further hearing of the motion, when it was taken under advisement by the court. On the second day following the complainant obtained leave to amend his bill, which he did, thereby asserting a claim to thirty-seven and one-half feet on each side of the lead or range struck by Wise and Bonhotel. Otherwise, the amended bill was the same as the original bill. The amended bill was also sworn to. The court then overruled the motion to dissolve the injunction, but modified it to some extent.

The defendant answered the amended bill as follows:

Denies that the claim of Bonhotel & Wise, under which complainant claims in amended bill, ever extended thirty-seven and a half feet on each side of the range or crevice, or any other distance, but avers that by express agreement with Wise, it was limited to the crevice or range itself. That Wise struck the lead and made the agreement for the range, and afterwards let Bonhotel have an interest therein, and exhibits the original permit in writing to Joseph Wise, by which he was limited to the ranges themselves.

Denies utterly the claim of seventy-five feet, or thirty-seven and a half on each side of the range. Denies that the range known as Marble's diggings was ever discovered, worked or claimed by Wise and complainant, or defendant and complainant, or any one else and complainant, or discovered even before complainant went to the war.

Denies that the mineral spoken of in amended bill as sold to Hughlett & Son, was raised on the old range in which complainant had an interest, and denies that said range has been worked since December, 1862, by any one, and avers that the Marble diggings have no connection with said old range.

The defendent again moved to dissolve the injunction, which was denied. The complainant then asked leave a second time, to amend his bill, and was allowed to do so. The second amended bill is the same as the original bill, except that the

contract between Bonhotel and Colonky as to working the mine, is to continue until the mine is worked out, instead of until complainant should return from the war. Also the contract between Colonky and Marble is alleged to be for working the mine so long as there was any mineral, instead of until the complainant returned from the war.

The complainant filed a replication to the defendant's answer, and also presented certain issues relating to the matter in controversy, which, by agreement of the parties, were submitted to a jury for trial. The jury found the issues in favor of the complainant. Afterwards, the defendant, without having given the complainant notice thereof, applied for a change of venue; and also entered his motion to set aside the finding of the jury.

The motions for a change of venue, and to set aside the finding of the jury, were both overruled.

The defendant answered the last amended bill, denying each and every allegation therein.

Subsequently to these proceedings, the defendant applied for a continuance of the cause, upon the ground of the absence of certain witnesses. It appeared, however, from the affidavit presented in support of the application, that the defendant expected to prove by the absent witnesses, only such facts as had relation to the issues which had already been tried and found by the jury. And it did not appear that the depositions of the witnesses could not have been taken.

The application for a continuance was denied.

The cause then came on for a final hearing, and a decree was entered, finding defendant a tenant of complainant, ordering a payment of money in the hands of Hughlett & Son to complainant, and also that defendant Marble pay $37.19 to complainant, and pay costs of suit. Also, that Marble pay to Bonhotel one-fourth of the proceeds of said mine, after paying ground rent.

A question is made in this court, whether the proofs warranted the finding of the jury and the decree of the court below; but as the determination of that matter would be of no interest in any other case, the evidence is omitted.

The defendant appealed from the decree below, and now alleges:

1. The court erred in granting injunction, and particularly in doing so without defendant having notice of the application before the same was granted.

2. The court erred in refusing to dissolve on motion, after filing answer denying allegations of the bill.

3. The court erred in allowing the bill to be amended in a material point, making a new case by the amendment, after answer filed and motion to dissolve injunction.

4. The court erred in refusing the motion to dissolve injunction after answer filed to the amended bill and affidavit, and exhibit thereto attached, denying the allegations of amended bill.

5. The court erred in refusing to dissolve the injunction on motion and affidavit filed showing that the bill had been amended in vacation without leave.

6. The court erred in granting leave to complainant, on motion and affidavit for that purpose, to file second amended bill, without prejudice to the injunction, and especially, inasmuch as the application wholly failed to show what amendment was to be made, and also that the matter of the amendment was unknown to complainant at the time of filing said original bill.

7. The court erred in overruling demurrer to complainant's second amended bill for cause shown.

8. The court erred in refusing application for a change of venue on affidavit filed therefor.

9. The court erred in overruling and refusing motion to dissolve injunction on filing answer to second amended bill, denying all the allegations in said bill.

10. The court erred in overruling motion for continuance on affidavit filed therewith.

11. The court erred in the rendition of the decree complained of, and particularly in granting said decree without any proof.

12. The court erred in rendering any decree for the complainant on so defective a bill.

13. The court erred in not dismissing the bill on hearing, there being no evidence against the defendant.

14. The court erred in not dismissing the bill for want of sufficient description of the premises to warrant a decree.

Messrs. A. L. CUMMINGS and M. Y. JOHNSON, for the appellant.

Mr. T. A. GREEN, for the appellee.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

The granting of a temporary injunction by either the court or by a judge in vacation is a matter of sound discretion, and cannot be reviewed, on appeal or error. If upon motion or the coming in of the answer, the court becomes satisfied that it was improvidently issued, it would be dissolved. But on the final hearing, it is error for the court wrongfully to make it perpetual, or to wrongfully refuse to do so, and such decree may be reviewed in an appellate court. The awarding of the temporary injunction in this case, even if it was improperly done, cannot be assigned for error.

It is insisted that the court below erred in permitting an amendment of the bill to conform to the proof, inasmuch as it was verified by oath. Such amendments are usually allowed in a court of equity for the purpose of furthering justice. A court of equity is liberal in permitting amendments of the pleadings that complete justice may be done. When allowed, if necessary, terms will be imposed, that undue advantage may not be obtained by the party asking the favor. Nor does the fact that the bill is verified by oath necessarily deprive the complainant of the benefit of an amendment. It is, however, no doubt true that he is estopped from so amending his bill as to contradict facts which he has sworn to be positively true, unless he could clearly show the court that the statement was made in

mistake. But when, as in this case, it only enlarges and amplifies the statement, or states additional facts, no objection is perceived in permitting the amendment to be made. It is not necessary now to determine what, if any, effect it might have upon the injunction, unless the leave was granted without prejudice to the injunction.

The statute requires, that notice of an intended application for a change of venue shall be given to the opposite party. This requirement cannot be dispensed with unless formally waived by the opposite party. *Hunt* v. *Tinkum,* 21 Ill. 639. In this case no such notice was given, and the court decided correctly in overruling the motion for a change of venue.

It is also insisted that the court erred in refusing a continuance of the cause. The evidence sought to be obtained from the absent witnesses only related to issues which had been tried and found by the jury, with the consent of defendant below. The court had already overruled a motion to set aside the verdict of the jury, and we are at a loss to perceive how the evidence of this witness, had it been obtained, could have been material for any purpose at that stage of the proceedings. Even if this were not so, it was not material, as the affidavit does not state that Colonky had authority to sell the property. Nor can we say that the affidavit discloses diligence. It does not appear that his deposition could not have been taken. Having the right to do so, the party cannot neglect to procure his evidence in that mode, and rely upon his attending as a witness under a subpœna, without some good reason for so doing.

We now come to the consideration of the main question in the case: Does the evidence support the decree? The issues were formed and submitted to a jury, who heard the evidence and found them in favor of complainant. Whilst the evidence may not be altogether free from doubt, yet we think it preponderates in favor of the finding of the jury, and is sufficient to sustain the verdict. And a case of this character, like any other, must be governed by the rule that a verdict will not be disturbed by this court for mere doubts as to the proof of a fact. We are not to expect demonstration in the deter-

mination of disputed questions of fact. We can, generally, only expect a preponderance of evidence, and in this case we regard it as decidedly in favor of the truth of the bill, and warranted the decree of the court below. It appears that the questions were all fairly presented to the jury on proper instructions from the court, and no error being perceived in the record the decree must be affirmed.

*Decree affirmed.*