Patterson v. Johnson.

Clara Haley Patterson and Axel Nelson v. Amanda S. Johnson.

|114    329|
|a214s  481|

Gen. No. 11,172.

1. BLACKSMITH SHOP—*when, cannot be maintained.* *Held,* under a particular ordinance, that no blacksmith shop can be maintained on any street in any block in which two-thirds of the buildings on both sides of the street are used exclusively for residence purposes, unless a majority of the property owners according to frontage on both sides of the street for the length of the block in which the blacksmith shop is to be located, consent thereto. (Harrison v. The People, 195 Ill. 466, distinguished.)

2. IRREPARABLE INJURY—*when, established.* Special damage and irreparable injury are established where the removal of a building would injuriously affect the property of the complainant and expose the buildings of such complainant to a greater danger from fire, would increase the rate of insurance charged upon such buildings and would depreciate their market and rental value.

3. OPINION EVIDENCE—*when, competent.* Opinion evidence is competent to show the probable consequences of threatened acts, where, under the existing circumstances, no better evidence could be offered.

4. ISSUES—*when, waived.* While it is irregular to take a reference to and proceed before a master in chancery without a formal joinder of issues, yet the irregularity is waived where the complaining party neither objected to the reference nor to the proceedings before the master and where all parties to the cause treated the issues as properly formed, and it does not appear that any injury resulted.

5. AMENDMENTS—*power to permit, in chancery.* By virtue of section 37 of the Chancery Act the court has discretion to permit a complainant to amend his bill, even to the extent of filing an amended bill based upon new grounds, repugnant to and inconsistent with the grounds for relief relied upon in the original bill.

6. SWORN BILL—*necessity of verifying amendments to.* Ordinarily, amendments to a sworn bill should be verified; but the rule is not rigid and unbending, and it is only in cases where an injunction issues upon a bill and it becomes necessary to amend the same, that the injunction will not be continued in force unless the chancellor can see from the sworn amendment that such an amendment should be allowed without prejudice to the injunction.

7. THREATENED VIOLATION—*when bill alleges.* A bill of complaint charges a threatened violation of the blacksmith shop ordinance of the city of Chicago where it alleges that the defendants intended and were about to move a certain blacksmith shop to and upon a particular block and there " will continue to use such building as a blacksmith shop."

Proceeding for injunction. Appeal from the Superior Court of Cook County; the Hon. JESSE HOLDOM, Judge, presiding. Heard in the

Branch Appellate Court at the March term, 1903. Affirmed. Opinion filed June 3, 1904.

Statement by the Court. On May 22, 1902, appellee filed her bill of complaint, sworn to by her, against appellants and others in which she alleges *inter alia* that she is the owner of lots 7, 8, 35 and 36 in James F. Haley's subdivision of lot 2 of certain Assessors' Subdivisions in the city of Chicago, which said lots are located in a triangular block bounded by Clark street, Sheffield avenue and Addison avenue; that said lots 35 and 36 have a frontage of fifty feet on Clark street and said lots 7 and 8 have a frontage of fifty feet on Sheffield avenue; that she is now erecting on said lots 35 and 36 at great expense, a three-story brick and stone apartment building, containing six flats and having a frontage of fifty feet on Clark street; that said building will be built and ready for occupancy on or about the 15th of June, 1902; that said building on said lots 35 and 36 is a fine and superior brick and stone building, contains all modern improvements and is known as 1898 Clark street; that she is erecting on lots 7 and 8 at great expense, a three-story brick and stone apartment building, containing six apartments with all modern improvements and fronting fifty feet on Sheffield avenue; that said building will be complete and ready for occupancy on or about the 15th of June, 1902; that Clara Haley Patterson (one of appellants) is the owner of lots 2, 3, 4 and 5 in James F. Haley's said subdivision, which are situate in the same block as said lots 7, 8, 35 and 36; that said lot 2 fronts thirty feet on both Clark street and Sheffield avenue and each of said lots 3, 4 and 5 fronts twenty-five feet on both Clark street and Sheffield avenue; that said lots 3, 4 and 5 are unimproved and vacant; that on lot 2 there is located a one-story frame building; that lot 6 is situate in the same block as lots 7, 8, 35 and 36 and is owned, as complainant is informed and believes, by Axel Nelson; that said lot 6 fronts twenty-five feet on both Clark street and Sheffield avenue, is about 125 feet long and is situate just south of and next to said lots 7 and 36. The location of said lots and streets is shown by the following diagram :

Patterson v. Johnson.

The bill alleges further that said appellants and others are intending and about to remove and are now making preparations to remove said frame building, situate on lot 2, over and across said lots 3, 4 and 5, and to place said

frame building on said lot 6; that said building, when so placed on lot 6, will be next to, * * * abut and adjoin complainant's said building on lots 7 and 8, and also her said building on lots 35 and 36; that said frame building is about seventy-five feet long and about twenty-five feet wide and about twenty-two feet high. Alleges on information and belief that said frame building was erected and built about fifteen years ago, and consists of one story; that the roof is made of wooden shingles and the entire structure is made of wood; that the same is old and dilapidated and of highly combustible material, of little value, and has been injured more than fifty per cent of its original value by wear and tear and the effects of the elements; that said building is now used and for a long time last past has been used as a blacksmith shop, and a forge or furnace is in constant daily use in said building.

The bill further alleges that if said frame building be removed to and placed upon said lot 6, it would disfigure the block in which the foregoing lots and premises are situate and be a permanent detriment to the other premises in said block and injuriously affect said property of the complainant; that it would expose her building and the other buildings in said block to more danger from fire, raise the rate of insurance on the same, and make complainant's property and the other property in said block less marketable and salable, and would make her property less desirable to tenants and would depreciate and lessen its rental value, and that the damage and injury thus caused to the complainant would be irreparable; that all said premises and lots are located within the city of Chicago. Further alleges that on March 13, 1893, said city of Chicago passed an ordinance providing, by section 51 thereof, that before proceeding with the removal of any building a permit shall first be obtained by the owner or agent upon their written application from the commissioner of buildings and that such permit shall be granted "if said frame building has not been damaged to an extent greater than fifty per cent of its original value by fire, wear and tear and the action of

the elements or otherwise," said section further requiring the applicant to first obtain the written assent of the persons owning a majority of front feet of lots in the same block in which it is proposed to locate such removed building and also of a majority of persons owning front feet opposite the proposed location and within 150 feet of the same. Said ordinance provides that the same " shall not apply to the case of any person removing a building upon his own premises and not going upon the premises of any other person or upon any street, alley or other public place in making such removal." That on May 15, 1902, one Sheeler filed with the commissioner of public works of said city, an application for permission to remove said frame building as aforesaid; that said application is not signed by said Patterson or Nelson, or their other agents, and does not state fully and clearly the work contemplated to be done; that no permit should have issued; that said application does not contain the written assent to such removal of persons owning a majority of front feet of lots in the same block in which it is proposed to locate said frame building and of a majority of persons owning front feet opposite such proposed location and within 150 feet of the same; that said application does not contain the requisite number of owners of street front as required by said ordinance.

The bill waives answer under oath and prays that defendants may be enjoined from removing said frame building upon said lot 6 and from obtaining a permit for such removal upon the application filed by said Sheeler, and that upon the hearing said injunction may be made perpetual, and for other relief. A preliminary injunction issued as prayed.

Appellant Patterson filed her answer to the bill May 29, 1902, averring that she is the owner of said lots 2 to 6, both inclusive ; denies that said lot 6 now is or ever has been owned by Axel Nelson, or that said frame building was built fifteen years ago, or is old and dilapidated or built of combustible material or has been injured more than fifty per cent of its original value, but avers that the same was

built less than six years ago, of first-class material, is now in good condition and worth far in excess of fifty per cent of the original value and will be no discredit to the neighborhood; that the greater number of buildings in said block are of frame construction and both Clark street and Sheffield avenue are business streets in that neighborhood. Appellant Nelson filed a disclaimer to all manner of right, title and interest in and to the premises described in the bill.

On June 2, 1902, appellee amended her bill by setting up sections 57 and 58 of an ordinance passed March 28, 1898, section 57 providing that it should not be lawful to repair, reconstruct or remove any frame building which had been injured more than fifty per cent of its original value by wear and tear, by the effects of the elements or by fire, and section 58 providing that frame buildings should not be erected nearer than one foot to any line of the lot upon which they are built, street and alley lines excepted. On the same day the amendment was filed, appellee, without obtaining any rule on appellants to answer or demur, filed her replication, and on July 11, 1902, the cause was referred to a master to take proofs and report the same with his conclusions.

On July 30, 1902, at which time both parties had put in all their testimony before the master (he declaring the same closed on the following day) appellee filed a second amendment (not sworn to) to her bill by which she set up an ordinance of January 27, 1902, (amending section 49 of a former ordinance,) which amended section is as follows: "It shall not be lawful for any person, firm or corporation to locate, build, construct or maintain on any street * * * in any block in which two-thirds of the buildings on both sides of the street are used exclusively for residence purposes, any building for a * * * blacksmith shop * * * without the written consent of a majority of the property owners according to frontage on both sides of such street or alley. Such written consent shall be obtained and filed with the commissioner of buildings before a permit is issued for the construction or keeping of such building, provided

that in determining whether two-thirds of the buildings on both sides of the street are used exclusively for residence purposes, any building fronting upon another street and located upon a corner lot shall not be considered." The amendment further charged that the frame building in question was used exclusively as a blacksmith shop and would continue to be used as such. On August 28, 1902, the master filed his report finding the material allegations of the bill not proven and the equities of the cause with the defendants and recommending a dissolution of the temporary injunction and dismissal of the bill for want of equity. To this report appellee filed objections and exceptions which were sustained by the court. November 29, 1902, a final decree was entered finding the allegations of the bill to be substantially true concerning the location and ownership of the premises mentioned in the bill, (except that appellant Patterson was found to be the owner of lot 6 and that appellant Nelson had leased from her the frame building in question to be used as a blacksmith shop) concerning the character of the buildings and improvements upon the respective premises and the effect which the removal of said frame building to and upon lot 6 would have upon the neighborhood and the buildings of appellee. The decree further finds that the ordinances above referred to were in full force and effect at the time of the filing of the bill; that the application filed with the commissioner of public works for the removal of the frame building from lot 2 to lot 6 was not signed by appellants, or either of them, or their agents, and does not state fully and clearly the work contemplated to be done as required by said ordinances and the issuance of any permit to appellants would be unlawful and contrary to said ordinances; that said frame building had been damaged and injured to an extent greater than fifty per cent of its original value by wear and tear and by the action of the elements or otherwise; that the same had been used as a blacksmith shop long before the filing of the bill and that appellant Nelson as tenant of appellant Patterson intends to operate and conduct such shop in said

building when removed to and upon lot 6; that in order to build and maintain a blacksmith shop on said lot 6 it became necessary, under said ordinances, that appellants, or one of them, should obtain the written consent of a majority of the property owners according to the frontage on both sides of Sheffield avenue between Newport and Addison avenues, and that such consent had not been obtained nor filed with the commissioner of buildings of the city of Chicago; that the frame building when located on lot 6 would be within one foot of each of the north and south building lines of said lot.

The decree finds further that after the filing of the bill, and while the temporary injunction was in force, said frame building was, on behalf of said appellants, removed from lot 2 and placed upon lot 6, and that since such removal appellant Nelson has, with the knowledge and acquiescence of appellant Patterson, operated and conducted a blacksmith shop in the said building, now located on lot 6. By the decree, the temporary injunction against the removal of the building and obtaining a permit therefor is made perpetual, and appellants are also enjoined from permitting the building to remain upon lot 6, and are ordered and directed to remove the same from said lot within fifteen days. The decree also enjoins appellants from operating a blacksmith shop on lot 6 without first obtaining the written consent of the majority of the property owners on Sheffield avenue, between Newport and Addison avenues, according to frontage on both sides of Sheffield avenue, between Newport and Addison avenues. From this decree the present appeal is taken.

BOLEN & STEWART, for appellants.

A. M. PENCE, MORTON V. GILBERT and O. J. C. WRAY, for appellee.

MR. JUSTICE STEIN delivered the opinion of the court.

First. The decree in this case rests upon the violation of two different ordinances. The violation of either, if the

ordinance be valid and a case be otherwise made out, would be sufficient basis for the decree. One of the ordinances, being amended section 49, quoted in full in the preceding statement, forbids the maintenance of a blacksmith shop on any street "in any block in which two-thirds of the buildings on both sides of the street are used exclusively for residence purposes * * * without the written consent," etc., "provided that in determining whether" said two-thirds "are used exclusively for residence purposes any building fronting upon another street and located upon a corner lot shall not be considered." Lot 6, upon which appellants were about to remove the blacksmith shop, is situated in a block bounded by three streets, Clark street and Sheffield and Addison avenues. If the three streets be all considered, then under the evidence two-thirds of the buildings on both sides of them were not used exclusively for residence purposes, and no consent of a majority of the property owners was required, and the ordinance did not apply. On the other hand, if Sheffield avenue, one of the streets upon which the lot fronted, be alone considered, two-thirds of the buildings on both sides of that street were used exclusively for residence purposes, and the consent of a majority of the property owners on both sides of the street was required, and the ordinance did apply. It is not denied that there was no consent of the majority last mentioned.

Upon the authority of Harrison v. The People, 195 Ill. 466, it is contended that amended section 49 should be so construed as to require the consent of the property owners only where two-thirds of the buildings in the block, counting both sides of all the streets surrounding it, are used exclusively for residence purposes. In that case an ordinance provided that applications for a license to keep a dram-shop should be signed "by a majority of the property owners according to the frontage on both sides of the street in the block upon which such dram-shop is to be kept," and it was held that the words "on both sides of the street," etc., meant "both sides of each street surrounding the block in which the dram-shop was to be kept." The ordinance in the

Harrison case, however, did not contain the proviso which the one before us does, and which may have been and likely was inserted in order to guard against the construction sought to be put in that case upon the word "block." The opinion of the Supreme Court in the Harrison case was filed February 21, 1902, and the amended section with the added proviso we are considering was passed the 27th day of the month preceding. Previously the trial and Appellate Courts had decided that it was sufficient if the application for the license was signed by a majority of the property owners on both sides of the street upon which the dram-shop was proposed to be located, thus holding that "block" meant simply a part of a street and not a square. The proviso expressly excludes "any building fronting upon another street," that is, upon another street than the one where it is proposed to locate or maintain a blacksmith shop. In our opinion the Harrison case, *supra*, does not control this one, and under amended section 49 no blacksmith shop can be maintained on any street in any block in which two-thirds of the buildings on both sides of the street are used exclusively for residence purposes unless a majority of the property owners according to frontage on both sides of the street for the length of the block in which the blacksmith shop is to be located or maintained consent thereto.

The court found that the removal of the shop upon lot 6 would injuriously affect the property of appellee, expose her buildings to a greater danger from fire, increase the rate of insurance thereon about ten per cent, depreciate their market value about ten per cent, and lessen their rental value about ten per cent; that this damage and injury is irreparable and special to appellee. These findings bring the case at bar within the rulings in Griswold v. Brega, 160 Ill. 490, and 57 App. 554, where, upon a similar state of facts, a perpetual injunction against the removal of a wooden building in violation of a city ordinance was upheld. There, as here, it was contended that a mere depreciation in value of complainant's property and greater

danger from fire did not give rise to a nuisance and did not constitute an irreparable injury justifying the interposition of a court of equity; but both the Appellate and Supreme Courts held otherwise, although they were dealing, not with a frame building used as a blacksmith shop, but with a "wooden building" merely.

In view of the fact that appellee's buildings were in process of erection at the time she filed her bill and were not finished until the 25th of July, 1902, which was the very day when she closed her proofs before the master, the complaint of appellants that the testimony of her witnesses as to the effect of locating and maintaining the blacksmith shop alongside of her buildings is "mere opinion of what might happen," and should therefore be disregarded, is not entitled to much, if any, consideration. If the argument be sound, then appellee was bound in the first place to offer no objection to the placing of the obnoxious structure adjacent to her buildings, and also to permit the prosecution of the blacksmith business in the structure for a sufficient length of time to enable a definite ascertainment of the loss and injury thereby occasioned to her. Had she done so, she would have been charged with *laches* or estoppel *in pais*, and probably with both. In the very nature of things, appellee could, under the existing circumstances, offer none but opinion evidence as to the consequences to her of the threatened acts of appellants; and what those consequences would be is so apparent that but little testimony was required. Moreover, in this, as in many other instances where appellants contend that the findings of the decree are against the evidence or find no support therein, it is a sufficient answer that according to the recitals of the decree the cause was heard upon the testimony reported by the master, and "also the proofs and evidence heard in open court" without objection. What these proofs so heard were, is not shown by a certificate of evidence or otherwise; and we shall therefore presume that they were of such a character as to warrant the facts found by the court in its decree.

Being of opinion that appellants were clearly guilty of a violation of the ordinance governing the removal and maintenance of blacksmith shops, we deem it unnecessary to consider the questions of fact and law growing out of the finding of the decree that they were also guilty of a violation of the ordinance prohibiting the removal of a frame building injured over fifty per cent of its original value, and the erection of frame buildings nearer than one foot to any line of the lot upon which they are built.

Second. On the same day (June 2, 1902) that the bill was first amended, the replication was filed without any rule upon the defendants to demur, plead or answer. The second amendment was filed July 30, 1902, simultaneously with the closing of the proofs before the master, and also without any rule to answer. The cause was referred to the master July 11, 1902, without objection, and the ordinances pleaded in both amendments were offered and received in evidence by the master, also without objection, July 15, 1902. It thus appears that the cause was not at issue while pending before the master. Apparently to cure this irregularity, appellee obtained an order on appellants long after the master had filed his report to answer the amendments to the bill in five days. Three days after the entry of the order appellants moved to set it aside, which motion was denied, and on the same day, without waiting for the expiration of the rule to answer, the final decree was entered. That it was irregular to take the testimony, both before the master and in open court, without a formal joinder of issues, is not and cannot be denied. But the irregularity did appellants no harm and must be regarded as waived by them. They made no objection to the reference to the master. Both parties, at the hearing before the master as well as in open court, treated the case as at issue. No objection based upon the want of issue joined was raised at any time. The ordinances set up in the amendments were received without objection. Neither before the master nor the court did appellants at any time apply for a continuance on the ground of their being sur-

Patterson v. Johnson.

prised by the subject-matter of the amendments, or for the purpose of obtaining time to meet the same by additional proof.

In Miller v. Whittaker, 33 Ill. 387, after appellant had filed his answer to the bill, appellee amended his bill. The cause was set down for a hearing upon the bill, answer, replication, etc., by consent of appellant. The Supreme Court say: "He cannot now be heard to complain that he was not required to file a new answer. He was at liberty to file a new answer, but the complainant was not obliged to require him to do so. 1 Daniell's Ch. Pr., 468." In Jameson v. Conway, 5 Gil. 230, it was insisted that the decree must be reversed because no replication was filed. The court says: "The present cause was not set down for hearing on bill and answer, but it was submitted without objection on the pleadings and proofs; both parties participated. They treated the cause as if it was at issue and it was so heard and decided by the court. Under such circumstances it is too late to urge the objection in this court." In Long v. Fox, 100 Ill. 50, the court says: "If plaintiffs in error desired to answer they should at least have made application to do so at the time of the rendition of the decree. Before that time they had the right to do so without leave; but not having done so, and sitting quietly by and allowing the decree to go without asking an extension of time to answer, or even calling the attention of the court to the fact that there was a demurrer on file not passed upon, or in any other manner attempting to raise the question in the court below, we hold that it is now too late to raise it here for the first time. The hearing proceeded and the case was treated by both parties as though the issues were properly made up, and they cannot now be heard to say they were not made up." In Downey v. O'Donnell, 92 Ill. 561, the court says: "On the hearing the court allowed appellees to amend their bill, and this ruling is relied upon as error. This objection is fully met by section 37, chapter 22, Revised Statutes, 1874, p. 202, which is broad enough to allow the amendment. Had appellant been surprised at the

character of the amendment, and if the amendment was such that he was not then prepared for trial, it was his right under the statute to have applied for and obtained a continuance. But no application of this character was made, and as the statute authorized such amendment the court did right in allowing it." In Koch v. Roth, 150 Ill. 217, the court says: "In the present case the decree recites that the leave to amend the bill was granted against the objection of the defendants, but they were given leave to file an amended answer, and it nowhere appears that any exception was taken to the ruling of the court overruling the objection, or that any suggestion was made of surprise, or of the necessity of a continuance. There is nothing in.the record to show that the defendants were in any way injured or prejudiced by the action of the court, and it cannot therefore be said that there was any abuse of discretion or error in permitting the amended bill to be filed." Benepe v. Meier, 75 Ill. App. 561.

Appellants were in no way injured by the entry of the final decree before the expiration of the rule to answer. Under the practice in this state as above shown and the condition of the record before us, they could not have justly complained if no rule whatever had been entered. Appellants took a hostile attitude to the rule by moving to set it aside, and they cannot now be heard to complain that they did not get what they did not want.

Third. The bill as originally framed was predicated upon an ordinance which forbids the removal of a frame building "not damaged more than fifty per cent of its original value" except upon certain conditions alleged not to have been complied with, but expressly excepts from its operation "the case of any person removing a building upon his own premises." Appellee endeavored to bring herself within the terms of this ordinance by alleging in her bill that the lot upon which the building in question stood belonged to one of the appellants and that the lot to which it was about to be removed belonged to the other. When it appeared, however, that both lots belonged to the

same appellant, she amended her bill, first, by pleading an ordinance which prohibits absolutely the removal of "any frame building which has been injured more than fifty per cent of its original value," and secondly, by pleading the ordinance regulating the removal of blacksmith shops. Appellants insist that by these amendments appellee based her right to relief on a new ground repugnant to and inconsistent with the ground for relief relied on in the original bill. In this contention we cannot concur. The ordinance first pleaded treats of buildings damaged up to fifty per cent, and the second one, of those damaged over fifty per cent. The original bill alleged that the building in question was damaged over fifty per cent and the same allegation was appropriate to show a violation of the second ordinance. But even if there be such repugnancy and inconsistency as claimed, we see no objection to the course pursued by the court in allowing the amendments. Under section 37 of the Chancery Act "the court   *   *   *   may permit the parties to amend their bills   *   *   *   on such terms as the court may deem proper." The discretion thus vested in the court was properly exercised. Nothing would have been gained by either party if leave to amend had been refused, and appellee had been compelled to file a new bill and incur unnecessary costs and expenses. In Papin v. Goodrich, 103 Ill. 94, the bill as first filed prayed for specific performance of a contract, but by an amendment prayed for its cancellation. The amendment was held proper, the court observing that "the defendants had no vested rights in the phraseology or form of the bill," and citing Jefferson v. Kennard, 77 Ill. 246.

The original bill was sworn to, but the second amendment to it was not, for which reason it is argued that it should not have been allowed. That, ordinarily, in such a case the amendment should also be verified, has frequently been held. Gregg v. Brower, 67 Ill. 525; Jones v. Kennicott, 83 Ill. 484; High on Injunctions, 2nd ed., sec. 1592. But we apprehend the true meaning and object of the rule to be that in cases where an injunction issues upon a bill

and it becomes necessary to amend the same, the injunction will not be continued in force unless the chancellor can see from a sworn amendment that it should be allowed without prejudice to the injunction. In the case at bar no such question is raised. That the rule requiring verification of the amendment is not a rigid and unbending one appears from Gregg v. Brower, *supra*, cited by appellants, where, notwithstanding the rule was not adhered to, and although in the language of the court "the amendment was material, changing or rather adding to the liability of the appellant," yet the decree was affirmed. Mason v. Bair, 33 Ill. 194, was a bill for specific performance and to enjoin the prosecution of an action of ejectment, and it was held not to be error to allow an amendment to the bill after replication filed and the cause submitted on the evidence, the court saying : " Such amendments are allowed in furtherance of justice. They are within the discretion of the chancellor, and unless it appears that an amendment has worked injustice or great hardship to the defendant, the exercise of the discretion will not be controlled." In Marble v. Bonhotel, 35 Ill. 240, where the bill was also verified, the court laid down the same rule, and added that while the complainant is estopped from so amending his bill as to contradict facts which he has positively sworn to be true unless he can clearly show that the statement was made in mistake, yet when the amendment only enlarges and amplifies the statement or states additional facts (and such is the nature of the amendment under consideration) it is properly allowed. When the chancellor allowed the amendment, the subject-matter of it had been already proven before the master, and it was not necessary that it should be further verified. Bauer Grocer Co. v. Zelle, 172 Ill. 407. Besides, if on the final hearing the complainant shows himself to be entitled to an injunction the court will grant it to him although the bill is not sworn to. Hawkins v. Hunt, 14 Ill. 44; Shobe v. Luff, 66 Ill. App. 426.

Appellants are in error in asserting that the bill and the amendments did not charge a threatened violation of the

blacksmith shop ordinance. It was expressly alleged that a blacksmith shop had been maintained on lot 2 and that appellants intended and were about to move the same to and upon lot 6 and there " will continue to use said building as a blacksmith shop."

Finally, it is urged that the decree is " inconsistent and contradictory of itself." If such be the case, it would furnish no reason why it should be reversed, unless the inconsistency amount to legal error. That has not been shown. An error in logic is not necessarily an error in law. Nor have we been able to discover any inconsistency or self-contradiction.

The decree will be affirmed.

*Affirmed.*